# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                              :
BRIAN DUDLEY                  :    Civ. No. 3:16CV00513(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :    March 12, 2018
ACTING COMMISSIONER, SOCIAL   :
SECURITY ADMINISTRATION       :
                              :
-----------------------------x
```

## <u>RULING ON CROSS MOTIONS</u>

Plaintiff Brian Dudley ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner or remanding to the Commissioner for a new hearing. [Doc. #17]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #24].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #17]** is

**DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **GRANTED**.

## I.   PROCEDURAL HISTORY[1]

Plaintiff filed concurrent applications for DIB and SSI on August 22, 2012, alleging disability beginning January 1, 2012.[2] See Certified Transcript of the Administrative Record, Doc. #14, filed on July 19, 2016, (hereinafter "Tr.") at 203-21. Plaintiff's applications were denied initially on March 14, 2013, see Tr. 140-47, and upon reconsideration on October 9, 2013. See Tr. 150-152. Plaintiff has since amended his alleged onset date to September 18, 2012. See Tr. 284; see also Tr. 18.

On November 4, 2014, plaintiff, represented by Attorney Mark Waller, appeared and testified at a hearing before Administrative Law Judge ("ALJ") I. K. Harrington. See Tr. 36-68; 71-83. Vocational Expert ("VE") Richard B. Hall testified by telephone at the hearing. See Tr. 69-71; 83-89; 196-200. On March 10, 2015, the ALJ issued an unfavorable decision. See Tr.

---

[1] Rather than filing a joint stipulation of facts, plaintiff provided a narrative chronology in his brief. See Doc. #17-1 at 3-6. Defendant "agrees to Plaintiff's statement of facts" and supplements that statement in her brief. Doc. #24 at 3.

[2] There is a discrepancy as to plaintiff's application date. The applications of record reflect a filing date of August 22, 2012. See Tr. 203-21. Other documents reflect a protective filing date of August 8, 2012. See Tr. 241, 284. Because this discrepancy has no bearing on the Court's Ruling, the Court need not reconcile the different application dates.

15-35. On March 8, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 10, 2015, decision the final decision of the Commissioner. <u>See</u> Tr. 1-4. The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, now represented by Attorney Olia Yelner, timely filed this action for review and now moves to reverse the Commissioner's decision or for remand. [Doc. #17]. On appeal, plaintiff argues:

1. The ALJ erred at step two by not finding plaintiff's osteoarthritis and hearing loss to be severe impairments;

2. The ALJ erred at step three by finding that plaintiff does not meet Listing 12.02;

3. The ALJ failed to follow the treating physician rule, and did not give sufficient weight to the opinions of Dr. Khan, APRN Rector, and Dr. Kelly;

4. The ALJ erred in her Residual Functional Capacity ("RFC") determination because it does not include limitations related to hearing loss and osteoarthritis; and

5. The ALJ erred in her assessment of plaintiff's credibility.

<u>See generally</u> Doc. #17-1 at 8-16. As set forth below, the Court finds that ALJ Harrington did not err as contended.

# I. <u>STANDARD OF REVIEW</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that

finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL
1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v.
Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4,
1994)).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by
substantial evidence in the record and were based on a correct
legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.
2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507
(2d Cir. 2009)). **"[W]hether there is substantial evidence
supporting the appellant's view is not the question here;
rather, we must decide whether substantial evidence supports the
ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58,
59 (2d Cir. 2013) (citations omitted).

## II.  SSA LEGAL STANDARD

Under the Social Security Act, every individual who is
under a disability is entitled to disability insurance benefits.
42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore
entitled to benefits, plaintiff must demonstrate that he is
unable to work after a date specified "by reason of any

medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12
months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments
must be "of such severity that he is not only unable to do his
previous work but cannot, considering his age, education, and
work experience, engage in any other kind of substantial gainful
work which exists in the national economy." 42 U.S.C.
§423(d)(2)(A); 20 C.F.R. §§404.1520(c), 416.920(c) (requiring
that the impairment "significantly limit[] ... physical or
mental ability to do basic work activities" to be considered
"severe" (alterations added)).[3]

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §§404.1520, 416.920. In the
Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the

---

[3] Some of the Regulations cited in this decision were amended,
effective March 27, 2017. Throughout this decision, and unless
otherwise specifically noted, the Court applies and references
the versions of those Regulations that were in effect at the
time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x
801, 805 n.2 (2d Cir. 2012) (applying and referencing version of
regulation in effect when ALJ adjudicated plaintiff's claim);
see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015
WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court
considers the ALJ's decision in light of the regulation in
effect at the time of the decision." (citing Lowry, 474 F. App'x
at 805 n.2)).

claimant has a "severe impairment" which significantly
limits his physical or mental ability to do basic work
activities. If the claimant suffers such an impairment,
the third inquiry is whether, based solely on medical
evidence, the claimant has an impairment which is listed
in Appendix 1 of the regulations. If the claimant has
such an impairment, the Secretary will consider him
disabled without considering vocational factors such as
age, education, and work experience; the Secretary
presumes that a claimant who is afflicted with a "listed"
impairment is unable to perform substantial gainful
activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed
impairment, the Commissioner engages in the fourth and fifth
steps:

Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's
severe impairment, he has the residual functional
capacity to perform his past work. Finally, if the
claimant is unable to perform his past work, the
Secretary then determines whether there is other work
which the claimant could perform. Under the cases
previously discussed, the claimant bears the burden of
proof as to the first four steps, while the Secretary
must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens

of production and persuasion, but if the analysis proceeds to

the fifth step, there is a limited shift in the burden of proof

and the Commissioner is obligated to demonstrate that jobs exist

in the national or local economies that the claimant can perform

given [her] residual functional capacity." Gonzalez ex rel.

Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243
(2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155
(Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir.
2009) (per curiam)). The RFC is what a person is still capable
of doing despite limitations resulting from his physical and
mental impairments. See 20 C.F.R. §§404.1545(a)(1),
416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the
claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).
"[E]ligibility for benefits is to be determined in light of the
fact that 'the Social Security Act is a remedial statute to be
broadly construed and liberally applied.'" Id. (quoting Haberman
v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## III. **THE ALJ'S DECISION**

Following the above-described five-step evaluation process,
the ALJ concluded that plaintiff was not disabled under the Act.
See Tr. 30. At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity since the amended
alleged onset date of September 18, 2012. See Tr. 21. At step

two, the ALJ found that plaintiff had the severe impairments of major depressive disorder; substance abuse disorder; and organic mental disorder. See id. The ALJ determined that plaintiff's hypertension, knee osteoarthritis, and obesity were non-severe impairments. See Tr. 21-22.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 22-24. The ALJ specifically considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.09 (substance addiction disorders). See id. Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine tasks involving no more than simple, short instructions. The claimant is limited to work requiring only simple work-related decisions with few workplace changes. Lastly, the claimant is limited to work with no requirement to read instructions, write reports, or perform math calculations.

Tr. 24. At step four, the ALJ concluded that plaintiff was able to perform his past relevant work as a laborer. See Tr. 28. At step five, and after considering plaintiff's age, education, work experience and RFC, as well as the testimony of the VE, the ALJ alternatively found that, in addition to his past relevant

work as a laborer, other jobs existed in significant numbers in the national economy that plaintiff could perform. See Tr. 29-30.

## IV. DISCUSSION

Plaintiff raises five arguments in support of reversal or remand. The Court will address each in turn.

### A. *Step Two: Osteoarthritis and Hearing Loss*

Plaintiff asserts that the ALJ erred by finding that his osteoarthritis and hearing loss were not severe impairments. See Doc. #17-1 at 8-9. The ALJ found that osteoarthritis was a "medically determinable" but not severe impairment. Tr. 21. The ALJ did not identify hearing loss as an impairment.

At step two, the ALJ is required to determine the severity of plaintiff's impairments. See 20 C.F.R. §§404.1520(a)(4)(ii), 416.920(a)(4)(ii); see also id. at (c). At this step, plaintiff carries the burden of establishing that he is disabled, and must provide the evidence necessary to make determinations as to his disability. See 20 C.F.R. §§404.1512(a), 416.912(a). An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996). An impairment is "not severe" that constitutes only a slight abnormality having a minimal effect on

an individual's ability to perform basic work activities. <u>See</u>
<u>id.</u>

Before evaluating this argument, the Court pauses to note
that plaintiff was represented by counsel at the time of his
hearing (not the same counsel that represents him now), and that
he made no argument that he was disabled as a result of any
physical conditions. He asserted only mental impairments at the
time of the hearing. Plaintiff testified that he had "no
physical problems" when asked about his difficulties with work.
Tr. 62; <u>see also</u> Tr. 248 (August 24, 2012, Disability Report:
plaintiff reported having no appointments scheduled for any
physical conditions); Tr. 323 (December 4, 2012, Mental Health
Nursing Admission Evaluation Note: "Physical limitations: None,
independent in ADL's").

Plaintiff's initial allegations of impairments included
"back pain" and "nerve pain," but no assertion of hearing loss.
Tr. 90, 112, 245. However, plaintiff reported to the SSA that
"he did not have any limitations from back pain." Tr. 117.
Plaintiff's pre-hearing memorandum noted that plaintiff suffered
from obesity, hypertension, and joint pain, but did not assert
that he had any functional limitations resulting from those
conditions, and did not indicate that those physical conditions
affected his ability to work. <u>See</u> Tr. 284. Nevertheless, the

Court turns to plaintiff's argument that the ALJ erred at step two.

### 1. **Hearing Loss**

As to plaintiff's assertion that he suffers from hearing loss, the only citation to the record provided by plaintiff is to a record that specifically states that the test results were not valid. See Tr. 307. Furthermore, the record cited as supporting hearing loss of 12% in the right ear and 28% in the left ear does not appear, on its face, to support such a finding. To the contrary, the record states that the ratings of 88% and 72% represent a "speech discrimination score." Tr. 307-08. In any event, the report then goes on to state that the "speech discrimination score is not appropriate" for plaintiff because of issues "that make combined use of puretone average and speech discrimination scores inappropriate." Tr. 308. The report also concludes with a finding that plaintiff's tinnitus does not "impact ordinary conditions of life, including ability to work[.]" Tr. 313. In sum, this lone report that proclaims itself to be invalid is not sufficient to support a finding that the ALJ erred in finding that hearing loss was not a medically determinable impairment.

The only other evidence offered of a hearing impairment was the fact that during plaintiff's testimony, he asked the ALJ to

repeat a question, saying: "Excuse me, ma'am? My left ear, I can't really hear that well." Tr. 67. Otherwise, plaintiff's medical records do not reflect complaints of hearing loss. See, e.g., Tr. 425-28 (March 8, 2013, internal medicine examination reporting "ears normal" and reflecting no complaints of hearing loss); Tr. 508-11 (November 19, 2013, primary care visit summary reflecting no mention of hearing loss); Tr. 539 (April 7, 2014, Review of Symptoms negative for hearing loss); Tr. 541 (April 7, 2014, physical examination: "Hearing grossly intact"). Plaintiff also denied using a hearing aid. See Tr. 257. Accordingly, the ALJ did not err in failing to identify plaintiff's hearing loss as a severe or medically determinable impairment.

### 2. Osteoarthritis

As to plaintiff's asserted osteoarthritis, the records support the ALJ's finding that this is a medically determinable but not severe impairment. As the ALJ noted, the record reflects that plaintiff's osteoarthritis was being managed, and did "not appear to cause more than minimal limitations on the claimant's ability to perform work." Tr. 21. Plaintiff cites to a single record, from a March 2013 physical, in support of his assertion that the osteoarthritis is severe. That record states: "The claimant has a history of left knee pain that started two years ago. The pain is described as on and off pain." Tr. 425. The

doctor reported that the pain was "cramping in nature" and came on "twice a month" for "30 to 60 minutes." Id. The report further indicated that plaintiff suffered from low back pain twice a month for 20 to 30 minutes. See id. As to both of these issues, plaintiff reported that Advil and rest provided relief. See id.

Upon review of the complete record, the Court notes that the report relied upon by plaintiff also includes a finding that plaintiff had no abnormalities in a musculoskeletal exam and full strength in the lower extremities. See Tr. 426-28. The report of plaintiff's primary care examination in November 2013 reflects a diagnosis of "osteoarthritis bilateral knee and ankles" but no mention of back pain; the treatment recommended was weight loss, ACE bandages, and ibuprofen. Tr. 509. An April 7, 2014, treatment note also reflects a normal musculoskeletal examination. See Tr. 541. Further, on April 7, 2014, although plaintiff reported joint pain, he also reported that his pain was a "0/10" on the numerical pain intensity scale. Tr. 540. Thus, the record as a whole supports the ALJ's conclusion that plaintiff's osteoarthritis did not cause more than minimal limitations. Accordingly, there is no error.

***B.    Step Three: Listing 12.02***

Plaintiff contends that the ALJ's step three findings are not supported by substantial evidence. See Doc. #17-1 at 9-12. Specifically, plaintiff contends that his impairments meet or medically equal Listing 12.02. See id. Defendant responds that "the ALJ correctly concluded that Plaintiff's impairments, both singly and in combination, did not meet or medically equal a listed impairment." Doc. #24 at 9.

Plaintiff does not identify the specific paragraph of Listing 12.02 that his condition(s) purportedly meets. Plaintiff's brief, however, suggests that his impairments meet or medically equal paragraphs A and B of Listing 12.02. Those paragraphs state:

> 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented **persistence** of at least one of the following:
>
> 1. Disorientation to time and place; or
>
> ...

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions);

...

AND

B. **Resulting** in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.02 (emphases added).[4]

Plaintiff asserts that he meets Listing 12.02 because he: "has disorientation to time and place, as well as hallucinations"; is markedly impaired in his activities of daily living; "at least moderately impaired in social functioning"; and markedly impaired with respect to his concentration, persistence and pace. See generally Doc. #17-1 at 10-11.

"The applicant bears the burden of proof [at this stage] of the sequential inquiry[.]" Talavera, 697 F.3d at 151 (alterations added). "For a claimant to show that his impairment

---

[4] Effective January 2, 2015, to May 17, 2017.

matches a listing, it must meet <u>all</u> of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

Turning to the requirements of paragraph A, plaintiff points to no evidence supporting his position that he suffers from disorientation to time and place. Although the record reflects one instance of plaintiff experiencing an auditory and visual hallucination, <u>see</u> Tr. 339, one such episode does not satisfy paragraph A's requirement that plaintiff demonstrate a "medically documented **persistence**" of hallucinations. See <u>Taylor v. Colvin</u>, No. 6:12CV1389(GLS), 2013 WL 6181066, at *5 (N.D.N.Y. Nov. 22, 2013) ("To satisfy listing 12.02, ... [plaintiff] was required to demonstrate, 'a loss of specific cognitive abilities or affective changes and the <u>medically documented persistence</u> of at least one of' the conditions specified in paragraph A[.]" (quoting Listing 12.02) (emphasis added)). Additionally, this one episode occurred in June of 2012, which is three months prior to plaintiff's amended alleged onset date. Accordingly, substantial evidence supports a finding that plaintiff's mental impairment does not satisfy paragraph A of Listing 12.02. <u>See</u> <u>Johnson v. Astrue</u>, 563 F. Supp. 2d 444, 456 (S.D.N.Y. 2008) (Substantial evidence supported the ALJ's conclusion that plaintiff did not meet Listing 12.02 where plaintiff had "not

shown a _persistence_ of any of the described symptoms [in paragraph A]." (emphasis added)).

Further, "[t]he persistent condition from paragraph A must _result in_ at least two of the paragraph B conditions, specifically: 1. marked restriction of activities of daily living; or 2. marked difficulties in maintaining social functioning; or 3. marked difficulties in maintaining concentration, persistence, or pace; or 4. repeated episodes of decomposition." _Taylor_, 2013 WL 6181066, at *6 (internal quotation marks omitted) (emphasis added) (quoting Listing 12.02(B)). Here, there is no allegation, and no evidence, that plaintiff's single hallucination, _i.e._, the alleged persistent condition from paragraph A, _resulted_ in at least two paragraph B conditions. Even if plaintiff's hallucination resulted in any paragraph B conditions, the ALJ's determination that those conditions were not "marked" is supported by substantial evidence.

As to activities of daily living, substantial evidence supports the ALJ's finding that plaintiff is minimally restricted. Plaintiff testified that he is able to cook and clean. _See_ Tr. 58. Although plaintiff reported that he sometimes needed reminders to bathe and put on clean clothes, _see_ Tr. 252, other portions of the record note that he is well or adequately

groomed. <u>See</u> Tr. 289, 298, 327, 505. Plaintiff reported to the

VA that he was "independent in ADL's." Tr. 323. He similarly

reported to Dr. Kelly that "he is able to accomplish ADLs

independently." Tr. 506. Dr. Ali's consultative examination

noted that plaintiff "is able to do cooking, cleaning, laundry,

and shopping. He showers, bathes, and dresses himself." Tr. 426.

State reviewing examiner Dr. Hill found plaintiff only mildly

restricted in this domain. <u>See</u> Tr. 119.

Substantial evidence also supports the ALJ's finding that

plaintiff is mildly restricted in social functioning. Plaintiff

testified that he socializes and "joke[s] around" with fellow

veterans at his supportive housing. Tr. 57; <u>see also</u> Tr. 63, 65.

Dr. Ali's consultative examination noted that plaintiff "spends

time ... socializing with friends." Tr. 426. Similarly,

plaintiff reported to Dr. Kelly that "[h]e socializes with

friends at the Home for the Brave," and he reported "positive"

relationships with his family. Tr. 506. State reviewing examiner

Dr. Hill also found plaintiff only mildly restricted in social

functioning. <u>See</u> Tr. 119.[5]

---

[5] Because the ALJ's findings as to plaintiff's activities of
daily living and social functioning are supported by substantial
evidence, and where plaintiff does not contend that he suffered
repeated episodes of extended duration decompensation, the Court
does not reach the issue of whether the ALJ's findings as to
plaintiff's ability to maintain concentration, persistence and
pace are supported by substantial evidence.

Finally, nothing in the record provides substantial evidence to support a finding that plaintiff meets Listing 12.02. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner "is entitled to rely not only on what the record says, but also on what it does not say[.]" (citing Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981))). Although plaintiff may disagree with the ALJ's characterization of the evidence, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citation omitted). Here, as recited above, substantial evidence supports the ALJ's finding that plaintiff's impairments do not meet or medically equal Listing 12.02. Thus, the ALJ did not err at step three.

### C. The Treating Physician Rule

Plaintiff next argues that the ALJ failed to properly follow the treating physician rule. See Doc. #17-1 at 12-13. Plaintiff specifically takes issue with the weight afforded to the opinions of Dr. Tasneem Khan and APRN Frank Rector, and Dr. Kelly. See id. Although defendant does not address the weight assigned to the opinion of Dr. Kelly, defendant contends that the ALJ properly evaluated the opinion of Dr. Khan and APRN Rector. See Doc. #24 at 10.

**1.   Applicable Law, Generally**

> "The SSA recognizes a 'treating physician' rule of
> deference to the views of the physician who has engaged
> in the primary treatment of the claimant," <u>Green-
> Younger</u>, 335 F.3d at 106. According to this rule, the
> opinion of a claimant's treating physician as to the
> nature and severity of the impairment is given
> "controlling weight" so long as it "is well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other
> substantial evidence in the case record." 20 C.F.R.
> §404.1527(d)(2); <u>see, e.g.</u>, <u>Green-Younger</u>, 335 F.3d at
> 106; <u>Shaw</u>, 221 F.3d at 134.

<u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008); <u>see also</u> 20

C.F.R. §§404.1567(c)(2), 416.927(c)(2). If the opinion, however,

is not "well-supported" by "medically acceptable" clinical and

laboratory diagnostic techniques, then the opinion cannot be

entitled to controlling weight. 20 C.F.R. §§404.1567(c)(2),

416.927(c)(2).

Only "acceptable medical sources" can provide medical

opinions and are considered treating sources whose opinions are

entitled to controlling weight. <u>See</u> 20 C.F.R. §§404.1567(a)(2),

(c), 416.927(a)(2), (c). Acceptable medical sources include,

<u>inter alia</u>, licensed physicians. <u>See</u> 20 C.F.R. §§404.1513(a),

416.913(a). APRNs, social workers, and physician assistants,

amongst others, are not acceptable medical sources, but rather

are considered "other sources." <u>See</u> 20 C.F.R. §§404.1513(d)(1)-

(4), 416.913(d)(1)-(4); <u>see also</u> SSR 06-03P, 2006 WL 2329939, at

*2 (S.S.A. Aug. 9, 2006).

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); SSR 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL 2329939, at *3-4.

### 2. Rector/Khan Opinion

Plaintiff first contends that the opinion authored by APRN Rector and co-signed by Dr. Khan is entitled to "substantial, if not controlling weight." Doc. #17-1 at 12.

The record contains a medical source statement signed by APRN Rector on September 30, 2012, and co-signed by Dr. Khan on October 1, 2012 (hereinafter the "Rector/Khan Opinion"). Tr. 298-301. With respect to this opinion, the ALJ stated:

> Although the medical source statement contains a co-signature from a medical doctor, this alone does not render the opinion from an acceptable medical source, especially in this case, where there is no evidence that Dr. Khan has either treated or even examined the claimant. All treatment notes clearly cite Mr. Rector as the treating provider (Exhibits 1F; 2F; 3F). An advanced practice registered nurse (APRN) is not an acceptable medical source ... While Mr. Rector is not an acceptable medical source as listed in the regulations, his reports

are considered form "another source," and were compared carefully to other evidence in the record. Statements made from other sources may be considered in evaluating the severity of the impairments and how they affect the claimant's ability to work. The undersigned accords Mr. Rector's opinion partial weight. The undersigned accords no weight to the assessment that the claimant's substance abuse disorder was in remission, given the claimant's subsequent relapse. (Exhibit 15F). No weight is given to the claimant's performance of activities of daily living because it is inconsistent with the claimant's self-described varied activities of daily living, and his admissions of wanting to, and actually looking for, work. (Exhibits 3E; 7F; 11F; 15F). The undersigned accords substantial weight, however, to Mr. Rector's opinions regarding the claimant's ability to perform tasks and function socially, as these ratings are based on the claimant's treatment relationship with this provider, and are consistent with Mr. Rector's treatment notes and the claimant's varied activities of daily living.

Tr. 27-28.

Plaintiff appears to contend that the ALJ should have treated the Rector/Khan Opinion as if it were from an acceptable medical source, i.e., Dr. Khan. When an "other source's" opinion is co-signed by an acceptable medical source, "but there are no records or other evidence to show that the [acceptable medical source] treated [plaintiff], the ['other source's'] opinion does not constitute the opinion of the [acceptable medical source]." Goulart v. Colvin, No. 3:15CV1573(WIG), 2017 WL 253949, at *4 (D. Conn. Jan. 20, 2017) (alterations added) (quoting Perez v. Colvin, No. 3:13CV868(HBF), 2014 WL 4852836, at *26 (D. Conn. Apr. 17, 2014)), report and recommendation adopted, 2014 WL

4852848 (Sept. 29, 2014). Plaintiff does not contend, nor is there any evidence in the record showing, that Dr. Khan ever treated, examined, or saw plaintiff. See, e.g., Tr. 287-94, 430-36, 544-50 (records from Connecticut Renaissance).[6] The record does not include a single mention of Dr. Khan's name other than on the medical source statement at issue. "As such, the ALJ was not required to treat the opinion as one from an "'acceptable medical source.'" Goulart, 2017 WL 253949, at *4; see also Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (ALJ did not err in refusing to find physicians' opinions controlling due to the physicians' "limited and remote contact" with plaintiff.).

Plaintiff also contends that "if the ALJ doubted that Dr. Khan had treated Mr. Dudley, she should have inquired about this issue by questioning [plaintiff], his attorney Mark Wawer, or Dr. Khan directly." Doc. #17-1 at 12-13. The Court construes this as an argument that the ALJ failed to develop the record as to Dr. Khan's treatment of plaintiff. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir.

---

[6] APRN Rector is affiliated with Connecticut Renaissance. See Tr. 430-36.

1996); see also Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015) (same). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation marks and citation omitted). The ALJ was under no obligation to further develop the record as it contains treatment notes from Connecticut Renaissance. See Goulart, 2017 WL 253949, at *4 ("The ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to sustain that conclusion under the applicable standard." (quoting Knight v. Astrue, 32 F. Supp. 3d 210, 222 (N.D.N.Y. 2012))). Thus, there is no error in that regard.

Finally, the ALJ's decision to afford no weight to the portions of the Rector/Khan Opinion addressing plaintiff's substance abuse remission and activities of daily living is supported by substantial evidence. The Rector/Khan Opinion states that as of September 2012, plaintiff's substance abuse was "currently in remission[.]" Tr. 298. However, a later treatment record from December 2013 reports plaintiff's relapse.

See Tr. 247 ("Client called to report he had relapsed on alcohol and THC[.]"). Accordingly, the ALJ appropriately afforded no weight to the statement that plaintiff's substance abuse was in remission.

The Rector/Khan Opinion also states that plaintiff had a slight to obvious problem in his activities of daily living. See Tr. 299. That opinion is inconsistent with plaintiff's reported activities of daily living, as previously discussed. See Section IV.B., supra. Therefore, the ALJ properly afforded no weight to this portion of the Rector/Khan Opinion.

Accordingly, the Court finds no error in the weight assigned to the Rector/Khan Opinion.

### 3. Dr. Kelly

Plaintiff next takes issue with the ALJ's assignment of "partial weight" to the opinion of Dr. Nancy Kelly, Psy.D, who performed a consultative psychiatric evaluation on plaintiff. See Tr. 504-07. With respect to the opinion of Dr. Kelly, the ALJ stated, inter alia:

> The undersigned assigns this opinion partial weight. While Dr. Kelly's conclusions are consistent with her own observations and with the medical record, Dr. Kelly only stated that the claimant might have certain limitations. Such conditional language is not fully probative of the claimant's functional limitations, and therefore this aspect to the decision deserves only little weight.

Tr. 28.

Plaintiff contends the ALJ should not have discounted Dr. Kelly's opinion for using conditional language and that "if the ALJ had any questions about this opinion, she should have questioned Dr. Kelly through an interrogatory." Doc. #17-1 at 13. In support of this argument, plaintiff reasons that "the ALJ has an unwaivable statutory obligation to 'make every reasonable effort to obtain from the individual's treating physician ... all medical evidence ... necessary in order to properly make a determination[.]" Id. (quoting 42 U.S.C. §§423(d)(2)(B) and 1382c(a)(3)(G)).

Plaintiff's argument as to Dr. Kelly lacks merit. First, Dr. Kelly provided a consultative examination and is not plaintiff's treating physician. A treating physician "is one who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." Coty v. Sullivan, 793 F. Supp. 83, 85–86 (S.D.N.Y. 1992) (internal quotation marks omitted) (quoting Schisler v. Bowen, 851 F.2d 43, 46 (2d Cir. 1988)); see also 20 CFR §§404.1527(a)(2), 416.927(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). There is no evidence that Dr. Kelly

had an ongoing treatment relationship with plaintiff. Therefore, she is not plaintiff's "treating physician" or "treating source." Accordingly, the ALJ was not under an obligation to obtain additional medical evidence from Dr. Kelly.

Second, the ALJ properly discounted Dr. Kelly's opinion in light of her use of conditional language to describe plaintiff's limitations. Dr. Kelly opined, <u>inter alia</u>, that plaintiff "may have moderate limitations following and understanding simple directions and performing simple tasks independently. He may have mild limitations maintaining attention and concentration. He may have moderate limitations learning new tasks, and marked limitations performing complex tasks independently. He may have moderate limitations making appropriate decisions." Tr. 506. The use of such conditional language, along with the terms "mild" and "moderate," is vague and provides little insight into plaintiff's actual mental functional capacity. <u>See, e.g.</u>, <u>Selian v. Astrue</u>, 708 F.3d 409, 421 (2d Cir. 2013); <u>Curry v. Apfel</u>, 209 F.3d 117, 123 (2d Cir. 2000), <u>superseded by statute on other grounds</u>, 20 C.F.R. §404.1560(c)(2), <u>as recognized in</u> <u>Douglass v. Astrue</u>, 496 F. App'x 154, 156 (2d Cir. 2012). Accordingly, it was not error for the ALJ to discount Dr. Kelly's opinion for its use of conditional language.

Finally, the ALJ was under no obligation to re-contact Dr. Kelly where, as here, "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history[.]" Rosa, 168 F.3d at 79 n.5 (citation and internal quotation marks omitted). Accordingly, the Court finds no error.

### D.   *The RFC Determination*

Next, plaintiff contends that the ALJ's RFC determination is erroneous because it does not include limitations related to plaintiff's hearing loss, osteoarthritis and back pain. See Doc. #17-1 at 13-15.

The Court has reviewed the entire record, and concluded that the ALJ did not err in finding that hearing loss was not a medically determinable impairment. The record simply does not support a finding that plaintiff's abilities are limited by hearing loss. See Tr. 425-28, 508-511, 539, 541.

Nor did the ALJ err in finding that osteoarthritis was not a severe impairment. The record does not support a finding that plaintiff's abilities are limited by any physical conditions, including osteoarthritis or back pain. See Tr. 117 (Plaintiff stated on July 1, 2013, that "he did not have any limitations from back pain."); Tr. 62 (plaintiff's testimony that he has "no physical problems"); Tr. 323 (December 4, 2012, VA medical

record: "Physical limitations: None"); Tr. 426-27, 540-41

(unremarkable physical examinations); Tr. 428 (Dr. Ali's medical

source statement: "Based on today's evaluation, there is no

[physical] restriction.").

Thus, substantial evidence supports the ALJ's RFC

determination and there is no error.

### E.    The ALJ's Assessment of Plaintiff's Credibility

Finally, plaintiff asserts that the ALJ erred in her

assessment of plaintiff's credibility. See Doc. #17-1 at 15-16.

Defendant responds that the ALJ "properly gauged Plaintiff's

credibility" and that there is no error. Doc. #24 at 11-12.

The ALJ found that plaintiff's "statements concerning the

intensity, persistence and limiting effects of [his] symptoms

are not entirely persuasive[.]" Tr. 25. In making this

determination the ALJ pointed to (1) plaintiff's medical

records; (2) plaintiff's complaints, or lack thereof, to medical

providers; (3) plaintiff's medication and treatment history; (4)

plaintiff's activities of daily living; (5) the inconsistency of

plaintiff's statements; (6) plaintiff's work history; and (7)

plaintiff's receipt of unemployment benefits during the relevant

time period. See Tr. 25-28.

"Credibility findings of an ALJ are entitled to great

deference and therefore can be reversed only if they are

patently unreasonable." <u>Pietrunti v. Dir., Office of Workers'
Comp. Programs</u>, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation
marks and citation omitted). The regulations set forth a two-
step process that the ALJ must follow in evaluating plaintiff's
subjective complaints. <u>First</u>, the ALJ must determine whether the
record demonstrates that the plaintiff possesses a "medically
determinable impairment that could reasonably be expected to
produce [plaintiff's] symptoms, such as pain." 20 C.F.R.
§§404.1529(b), 416.929(b). <u>Second</u>, the ALJ must assess the
credibility of the plaintiff's complaints regarding "the
intensity and persistence of [plaintiff's] symptoms" to
"determine how [the] symptoms limit [plaintiff's] capacity for
work." 20 C.F.R. §§404.1529(c), 416.929(c). The ALJ should
consider factors relevant to plaintiff's symptoms, such as pain,
including: (1) the claimant's daily activities; (2) the
"location, duration, frequency, and intensity" of the claimant's
pain or other symptoms; (3) any precipitating or aggravating
factors; (4) the "type, dosage, effectiveness, and side effects
of any medication" taken by claimant to alleviate the pain; (5)
"treatment, other than medication," that plaintiff has received
for relief of pain or other symptoms; (6) any other measures
plaintiff has used to relieve symptoms; and (7) other factors
concerning plaintiff's "functional limitations and restrictions

due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4

Plaintiff contends that the ALJ's credibility findings are based on six "erroneous reasons." Doc. #17-1 at 15. The Court addresses each in turn.

First, plaintiff contends that the ALJ erroneously discounted plaintiff's credibility because plaintiff verbalized an understanding of his doctor's instructions. See id. Plaintiff asserts: "[V]erbalizing that he understands instructions from his doctors does not mean that he actually understands, nor does it diminish his credibility." Id. Plaintiff's argument mischaracterizes the ALJ's decision, which states:

> [T]he claimant testified at the hearing that his mental impairments cause him to be unable to work. ... As for functional imitations, the claimant testified that he has a hard time keeping up with people telling him what to do. He stated that he has a hard time following instructions, a short attention span, and memory issues.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to

cause the alleged symptoms. However, the claimant's
statements concerning the intensity, persistence and
limiting effects of these symptoms are not entirely
persuasive for the reasons explained in this decision.

For example, the credibility of the claimant's alleged
disabling symptoms and limitations is diminished because
those allegations are greater than expected in light of
the treatment notes. Specifically, the record indicates
that the claimant has been able to understand
instructions given to him by providers, as he verbalized
such an understanding during an examination in November
2011. (Ex. 12F). More recently in April 2014, upon
physical and psychological examination, the claimant had
normal results.

Tr. 25.

It was permissible for the ALJ to consider inconsistencies
between treatment records and plaintiff's testimony. "One strong
indication of the credibility of an individual's statements is
their consistency, both internally and with other information in
the case record." SSR 96-7p, 1996 WL 362209 (S.S.A. July 2,
1996). Indeed, "[t]he adjudicator must compare statements made
by the individual in connection with his or her claim for
disability benefits with statements he or she made under other
circumstances, when such information is in the case record.
Especially important are statements made to treating or
examining medical sources and to the 'other sources[.]'" Id.
Accordingly, the ALJ did not err when considering the
consistency of plaintiff's statements. See also Burnette v.
Colvin, 564 F. App'x 605, 609 (2d Cir. 2014) ("Here,

the ALJ found inconsistencies between [plaintiff's] statements and the evidence. ... Thus, the ALJ acted well within his discretion in concluding that [plaintiff] was less than credible on at least some of her claims.").

Second, plaintiff takes issue with the ALJ's statement that plaintiff "had a 'relapse of his substance abuse issues.'" Doc. #17-1 at 15 (quoting Tr. 25). Plaintiff contends that past misconduct, unrelated to honesty, is not relevant to a claimant's credibility. See id. Plaintiff again mischaracterizes the ALJ's decision, which states: "[T]he treatment record indicates that the claimant has had a relapse of his substance use issues. (Exhibit 15F). This does not lend credibility to the claimant's allegations that his substance abuse disorder has been in remission since September 18, 2012." Tr. 25. The ALJ plainly did not equate plaintiff's past substance abuse to his credibility. Rather, the ALJ permissibly noted the inconsistencies between plaintiff's testimony and the record as a whole. See Burnette, 564 F. App'x at 609.

Third, plaintiff contends:

> [T]he ALJ said that Mr. Dudley denied symptoms of depression and anxiety "but not cognitive and learning problems." (Tr. 25). Mr. Dudley said that his doctors described limits partially mentally retarded (Tr. 54) and admitted that this makes him depressed (Tr. 56). Furthermore, the ALJ cannot reply on a claimant's attempts at social pleasantries to establish objective

> facts. Mr. Dudley's sometimes positive attitude should
> not be used to discredit his statements.

Doc. #17-1 at 16 (sic). Plaintiff misquotes the ALJ's decision,

which states: "During the claimant's October 2013 evaluation,

Dr. Kelly noted that the claimant denied any symptoms of

depression and anxiety. On the other hand, the claimant

presented with cognitive issues including difficulties learning

new material and with organizing, abstracting, planning and

sequencing." Tr. 25. The ALJ made no reference to any "social

pleasantries," but again permissibly noted the inconsistencies

between plaintiff's statements and the medical record.

Accordingly, there is no error. See Burnette, 564 F. App'x at

609.

    Fourth, plaintiff contends that the ALJ erroneously stated

that his condition improved with medication. See Doc. #17-1 at

16. Specifically, plaintiff argues that he "suffers from an

organic mental disorder, including lifelong learning

disabilities[,]" and that "[t]here is no cure or medication that

could improve this condition." Id. Plaintiff again

mischaracterizes the ALJ's decision, which states:

> The claimant has received prescriptions for medication
> and has followed appropriate treatment for his alleged
> impairments, which weighs in his favor. However, the
> medical records reveal that the treatment has been
> relatively effective in controlling the claimant's
> symptoms. For example, notes from September 2012 reveal
> that since July of that year, the claimant had shown

> improvement. (Exhibit 3F/2). Further, the claimant
> successfully completed an Intensive Outpatient Program
> (IOP) on January 7, 2013. He made good progress in
> treatment, and attended all group sessions. The record
> also states that the claimant was satisfied with his
> current treatment.

Tr. 26. The ALJ permissibly considered plaintiff's medication

and treatment regimen when determining plaintiff's credibility.

See 20 C.F.R. §§404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v).

Accordingly, the Court finds no error.

Fifth, plaintiff contends that his "statements that he

would like to work is not indicative of poor credibility." Doc.

#17-1 at 16 (sic). Again, plaintiff takes the ALJ's statements

out of context. The ALJ found:

> The claimant has made several inconsistent statements
> that diminish the persuasiveness of his subjective
> complaints and alleged functional limitations. Indeed,
> the record also contains statements that suggest that at
> times the claimant did not view himself as disabled as
> he currently alleges, and instead show a far greater
> functional ability. Specifically, the claimant stated
> that he wants to work and has looked for work. (Exhibits
> 7F/4; 15F/1). These statements, made during the course
> of treatment and at the hearing, are highly probative,
> and do not corroborate the claimant's allegations of
> disability.

Tr. 26. The ALJ permissibly considered the inconsistency of

plaintiff's statements. Plaintiff's statements that he would

like to work and has looked for work constituted but one factor

in the ALJ's overall credibility determination, which complies

with the Regulations and is supported by substantial evidence.

Accordingly, there is no error. See Breland v. Comm'r of Soc. Sec., No. 5:15CV0414(GTS)(WBC), 2016 WL 4491711, at *6 (N.D.N.Y. Aug. 1, 2016), report and recommendation adopted sub nom. Breland v. Colvin, 2016 WL 4487781 (Aug. 25, 2016) (ALJ's credibility analysis was proper where "the ALJ's reliance on Plaintiff's job search was but one factor in his overall credibility determination.").[7]

Last, plaintiff objects to the ALJ's notation of plaintiff's sporadic work history. See Doc. #17-1 at 16. The ALJ found that "the claimant's sporadic work history raises a question as to whether the claimant's continuing unemployment is actually due to his medical impairments." Tr. 26. "Just as a good work history may be deemed probative of credibility, a poor work history may prove probative as well." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); accord Camille v. Colvin, 104 F. Supp. 3d 329, 347 (W.D.N.Y. 2015), aff'd, 652 F. App'x 25 (2d Cir.

_____

[7] As noted by the ALJ, the record also reflects that during the relevant time period, plaintiff received unemployment benefits. See Tr. 26, 63, 327. "Courts throughout the United States have held that the issue of a plaintiff claiming to be disabled yet drawing unemployment insurance benefits may be considered in determining a plaintiff's credibility." Nix v. Colvin, No. 15CV0328(FPG), 2016 WL 3681463, at *7 (W.D.N.Y. July 6, 2016) (quoting Jackson v. Astrue, No. 1:05CV01061(NPM), 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009))); accord Brooks v. Comm'r of Soc. Sec., 207 F. Supp. 3d 361, 373 (S.D.N.Y. 2016).

2016). Plaintiff's sporadic work history was just one of many factors considered by the ALJ when assessing plaintiff's credibility. "Because the ALJ was permitted to consider Plaintiff's sparse work record in assessing Plaintiff's credibility, the ALJ did not commit a reversible legal error." Camille, 104 F. Supp. 3d at 347; see also Schaal, 134 F.3d at 502 ("[T]he ALJ did not commit legal error by taking account of plaintiff's limited work history as one factor in assessing the credibility of her testimony regarding her symptoms.").

Here, where the ALJ has identified a number of specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Moreover, the ALJ had the opportunity to personally observe plaintiff and his testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

## V.   CONCLUSION

For the reasons set forth herein, the defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #24]** is **GRANTED,** and plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #17]** is **DENIED.**

SO ORDERED at New Haven, Connecticut, this 12th day of March, 2018.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE